Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINRUI TANG,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIS TOWERS WATSON PUBLIC LIMITED COMPANY, ANNA C. CATALANO, VICTOR F. GANZI, JOHN J. HALEY, WENDY E. LANE, BRENDAN R. O'NEILL, JAYMIN B. PATEL, LINDA D. RABBITT, PAUL D. THOMAS, and WILHELM ZELLER,<br><br>Defendants. | Case No.  **'20 CV0986 BEN BLM**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Minrui Tang ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Willis Towers Watson Public Limited Company ("WTW" or the "Company") and the members of WTW's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which WTW will be acquired by Aon plc ("Aon") (the "Proposed Transaction").

2. On March 9, 2020, WTW and Aon issued a joint press release announcing that they had entered into a Business Combination Agreement dated March 9, 2020 (the "Business Combination Agreement") to sell WTW to Aon. Under the terms of the Business Combination Agreement, each holder of WTW Class A ordinary shares will receive 1.08 Aon Class A ordinary shares for each WTW Class A ordinary share they own (the "Merger Consideration"). Upon consummation of the Proposed Transaction, Aon and WTW shareholders will own approximately 62.3% and 37.7% of the combined company, respectively. The Proposed Transaction is valued at approximately $26.7 billion.

3. On May 11, 2020, WTW filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that WTW stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company and Aon management's financial projections for each of WTW, Aon and the combined pro forma company, as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (ii) Goldman's potential conflicts of interest.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, WTW's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates offices in La Jolla and San Diego, California, which are located in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of WTW.

9. Defendant WTW is an Irish public limited company, with its principal executive offices located at c/o Willis Group Limited, 51 Lime Street, London EC3M 7DQ, England. The Company is a leading global advisory, broking and solutions company that designs and delivers solutions that manage risk, optimize benefits, cultivate talent and expand the power of capital to protect and strengthen institutions and individuals. WTW's common stock trades on the NASDAQ Global Select Market under the ticker symbol "WLTW."

10. Defendant Anna C. Catalano ("Catalano") has been a director of the Company since January 2016. Defendant Catalano also previously served as a director of legacy Willis Group[1] since January 2006.

11. Defendant Victor F. Ganzi ("Ganzi") has served as Non-Executive Chairman since January 2019 and has been a director of the Company since January 2016. Defendant Ganzi also previously served as a director of legacy Towers Watson since January 2010.

12. Defendant John J. Haley ("Haley") has served as Chief Executive Officer ("CEO") and a director of the Company since January 2016. Defendant Haley also previously served as CEO and Chairman of the board of legacy Towers Watson since January 2010, and as legacy Towers Watson's President beginning in October 2011.

13. Defendant Wendy E. Lane ("Lane") has been a director of the Company since January 2016. Defendant Lane also previously served as a director of legacy Willis Group beginning in April 2004.

14. Defendant Brendan R. O'Neill ("O'Neill") has been a director of the Company since January 2016. Defendant O'Neill previously served as a director of legacy Towers Watson beginning in January 2010.

---

[1] WTW was formed on January 4, 2016 upon completion of the merger between Willis Group Holdings Public Limited Company ("legacy Willis Group") and Towers Watson & Co. ("legacy Towers Watson").

- 4 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15. Defendant Jaymin B. Patel ("Patel") has been a director of the Company since January 2016. Defendant Patel also previously served as a director of legacy Willis Group beginning in July 2013.

16. Defendant Linda D. Rabbitt ("Rabbitt") has been a director of the Company since January 2016. Defendant Rabbitt previously served as a director of legacy Towers Watson beginning in January 2010.

17. Defendant Paul D. Thomas ("Thomas") has been a director of the Company since January 2016. Defendant Thomas previously served as a director of legacy Towers Watson beginning in January 2010.

18. Defendant Wilhelm Zeller ("Zeller") has been a director of the Company since January 2016. Defendant Zeller previously served as a director of legacy Towers Watson beginning in January 2010.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Aon is a public limited company incorporated in Ireland, with its principal executive offices located at Metropolitan Building, James Joyce Street, Dublin 1, Ireland. It is a leading global professional services firm providing a broad range of risk, retirement and health solutions. Its 50,000 colleagues in 120 countries empower results for clients by using proprietary data and analytics to deliver insights that reduce volatility and improve performance. Aon's common stock trades on the New York Stock Exchange under the ticker symbol "AON."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Tracing its history back to 1828, WTW is a leading global advisory, broking and solutions company that helps clients around the world turn risk into a path for growth. WTW has more than 45,000 employees and services clients in more than 140 countries. The Company designs and delivers solutions that manage risk, optimize benefits, cultivate talent and expand the power of capital to protect and strengthen institutions and individuals. WTW provides a comprehensive offering of services and solutions to clients across four business segments: Human Capital and Benefits; Corporate Risk and Broking; Investment, Risk and Reinsurance; and Benefits Delivery and Administration.

22. The Company's clients operate on a global and local scale in a multitude of businesses and industries throughout the world and generally range in size from large, major multinational corporations to middle-market domestic and international companies. WTW clients include many of the world's leading corporations, including approximately 94% of the FTSE 100, 91% of the Fortune 1000, and 93% of the Fortune Global 500 companies. The Company advises the majority of the world's leading insurance companies, and also works with major corporations, emerging growth companies, governmental agencies and not-for-profit institutions in a wide variety of industries, with many client relationships spanning decades.

23. On April 30, 2020, WTW announced its first quarter 2020 financial results, including Company revenue of $2.47 billion, an increase of 7% (8% increase constant currency and 4% organic) as compared to $2.31 billion for the first quarter of 2019. Income from operations for the first quarter was $360 million, and adjusted operating income was $525 million. Net income attributable to WTW for the first quarter of 2020 was $305 million, an increase of 6% from $287 million for the first quarter of 2019. For the quarter, diluted earnings per share were $2.34 and adjusted diluted earnings per share were $3.34. Adjusted EBITDA for the first quarter of 2020 was $680 million, or 27.6% of

- 6 -

revenue, an increase from Adjusted EBITDA of $601 million, or 26.0% of revenue in the first quarter of 2019. Cash flows from operating activities for the quarter ended March 31, 2020 were $23 million compared to negative $47 million for the first quarter of 2019. Defendant Haley commented on the results, stating:

> Willis Towers Watson executed well in the first quarter while navigating the unprecedented challenges brought on by the COVID-19 pandemic. I would like to personally acknowledge and thank our colleagues for remaining steadfast in supporting our clients and each other through a very challenging environment. We are dealing with extraordinary times, but I am pleased to say our resilience, experience and business continuity plans have enabled us to operate at a high level globally, and we believe we remain well-positioned to manage through this difficult period, while continuing to serve our clients, engage our colleagues and deliver value for our shareholders.

**The Proposed Transaction**

24. On March 9, 2020, WTW and Aon issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> LONDON, March 9, 2020 -- Aon plc (NYSE:AON) and Willis Towers Watson (NASDAQ: WLTW) today announced a definitive agreement to combine in an all-stock transaction with an implied combined equity value of approximately $80 billion.
>
> "The combination of Willis Towers Watson and Aon is a natural next step in our journey to better serve our clients in the areas of people, risk and capital," said Willis Towers Watson CEO John Haley. "This transaction accelerates that journey by providing our combined teams the opportunity to drive innovation more quickly and deliver more value."
>
> "This combination will create a more innovative platform capable of delivering better outcomes for all stakeholders, including clients, colleagues, partners and investors," said Aon CEO Greg Case. "Our world-class expertise across risk, retirement and health will accelerate the creation of new solutions that more efficiently match capital with unmet client needs in high-growth areas like cyber, delegated investments, intellectual property, climate risk and health solutions."
>
> "Together with Aon, we are positioned to create unique Industrial IoT solutions through the integration of our best-in-class technologies for today's increasingly connected world," added WTW's CEO, Narbeh Derhacobian. "We are extremely pleased to join Aon to bring more value to our combined customer base."
>
> \*\*\*
>
> **Structure and Governance**

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The combined company, to be named Aon, will be the premier, technology-enabled global professional services firm focused on the areas of risk, retirement and health.

Aon will maintain operating headquarters in London, United Kingdom. John Haley will take on the role of Executive Chairman with a focus on growth and innovation strategy. The combined firm will be led by Greg Case and Aon Chief Financial Officer Christa Davies, along with a highly experienced and proven leadership team that reflects the complementary strengths and capabilities of both organizations. The Board of Directors will comprise proportional members from Aon and Willis Towers Watson's current directors.

**Transaction Structure and Terms**

Under the terms of the agreement unanimously approved by the Boards of Directors of both companies, each Willis Towers Watson shareholder will receive 1.08 Aon ordinary shares for each Willis Towers Watson ordinary share, and Aon shareholders will continue to own the same number of ordinary shares in the combined company as they do immediately prior to the closing. Upon completion of the combination, existing Aon shareholders will own approximately 63% and existing Willis Towers Watson shareholders will own approximately 37% of the combined company on a fully diluted basis.

Aon anticipates that the transaction will provide annual pre-tax synergies and other cost reductions of $800 million by the third full year of combination, thereby allowing the firm to continue significant investment in innovation and growth. Potential revenue synergies due to complementary capabilities are expected but not included in the synergy estimates. The principal sources of potential synergies and other cost reductions are as follows:

- Approximately 73% from the consolidation of business and central support functions, including leveraging the capabilities of the Aon Business Services operational platform across the combined group; and
- Approximately 27% from the consolidation of infrastructure related to technology, real estate and third-party contracts

The transaction is expected to be accretive to Aon adjusted EPS in the first full year of the combination with peak adjusted EPS accretion in the high teens2 after full realization of $800 million of pre-tax synergies.3 Willis Towers Watson and Aon anticipate savings of $267 million in the first full year of the combination, reaching $600 million in the second full year, with the full $800 million achieved in the third full year.3 Free cash flow accretion is expected to breakeven in the second full year of the combination with free cash flow accretion of more than 10% after full realization of synergies.3 The transaction is expected to generate over $10 billion of shareholder value creation from the capitalized value of the expected pre-tax synergies, based on the blended 2020 price to earnings ratio of Willis Towers Watson and Aon UK on 6 March 2020, net of $2.0 billion in one-time transaction, retention and integration costs.

> The combined firm is committed to maintaining long-term financial goals of mid-single digit or greater organic revenue growth and double-digit free cash flow growth; and is expected to maintain Aon's current credit rating.
>
> It is intended that the combination will be implemented by means of a court-sanctioned scheme of arrangement of Willis Towers Watson and Willis Towers Watson Shareholders under Chapter 1, Part 9 of the Irish Companies Act of 2014.
>
> It is expected that the Reorganization of the Aon Group described in the Reorganization Proxy Statement will be completed prior to the completion of the combination, such that prior to completion of the combination, Aon Ireland will be the publicly traded parent company of the Aon Group. The Reorganization remains conditional on, among other things, the sanction of the UK scheme of arrangement forming part of the Reorganization by the UK Court, as more particularly described in the Reorganization Proxy Statement. Upon completion of the Reorganization, it is expected that the Aon Ireland Directors will be the same as the current Aon UK Directors.
>
> The transaction is subject to the approval of the shareholders of both Aon Ireland and Willis Towers Watson, as well as other customary closing conditions, including required regulatory approvals. The parties expect the transaction to close in the first half of 2021, subject to satisfaction of these conditions.

**Insiders' Interests in the Proposed Transaction**

25.   WTW insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of WTW.

26.   Notably, several Company insiders will secure positions for themselves with the combined company. Pursuant to the terms of the Proposed Transaction, four of the 11 members of the combined company's board of directors will be selected from among the directors of WTW, including defendant Haley. In addition, defendant Haley will be named Executive Chairman of Aon.

27.   Moreover, if they are terminated in connection with the Proposed Transaction, WTW's named executive officers stand to reap substantial cash payments, as set forth in the table below:

**Change in Control Compensation**

| Name | Cash $(1) | Equity $(2) | Pension / NQDC $(3) | Perquisites / Benefits $(4) | Tax Reimbursement $ | Total $ |
|---|---|---|---|---|---|---|
| John Haley | $9,600,000 | $18,297,468 | $1,015,492 | $23,291 | $0 | $28,936,251 |
| Michael Burwell | $3,687,500 | $6,872,875 | $0 | $31,982 | $0 | $10,592,357 |
| Gene Wickes | $2,513,333 | $4,416,699 | $0 | $24,844 | $0 | $6,954,876 |
| Carl Hess | $2,665,000 | $4,281,014 | $0 | $24,240 | $0 | $6,970,254 |
| Joe Gunn | $2,950,000 | $2,974,972 | $0 | $33,047 | $0 | $5,958,019 |

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to WTW's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company and Aon management's financial projections for each of WTW, Aon and the combined pro forma company, as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman; and (ii) Goldman's potential conflicts of interest.

*Material Omissions Concerning the Financial Projections and Goldman's Financial Analyses*

30.     The Proxy Statement omits material information regarding Company and Aon management's financial projections for WTW, Aon and the combined pro forma company.

31.     For example, the Proxy Statement sets forth:

> **WTW management also prepared projections for the Adjusted EBITDA and Unlevered Free Cash Flow of the combined company on a *pro forma* basis** by adding the values of Adjusted EBITDA and Unlevered Free Cash Flow set forth in each of the Aon Standalone Projections and the WTW Standalone Projections, and adjusting such amounts for (i) the anticipated pre-tax synergies and the pre-tax cost to achieve such synergies . . ., (ii) the pre-tax transaction costs and retention costs . . . and (iii) in the case of Unlevered Free Cash Flow, the cash tax impact on such adjustments. Solely for the purposes of calculating such pro forma projections, WTW management assumed that the transaction would close on December 31, 2020.

Proxy Statement at 108-109 (emphasis added).  The Proxy Statement fails, however, to disclose the estimates of adjusted EBITDA and unlevered free cash flow ("UFCF") for Aon pro forma for each of the fiscal years 2020 through 2024.  In addition, with respect to each of the WTW standalone projections and Aon standalone projections, the Proxy Statement fails to disclose all line items underlying UFCF and adjusted EBITDA.

32. The Proxy Statement also fails to disclose material information regarding Goldman's financial analyses.

33. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, WTW's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

34. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of WTW on a standalone basis, the Proxy Statement fails to disclose: (i) WTW's next 12 months ("NTM") earnings per ordinary share for the years 2020 to 2022; (ii) future dividends per WTW share for the projection period; and (iii) quantification of the inputs and assumptions underlying the discount rate of 5.7%.

35. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of WTW based on the theoretical future prices per ordinary share of the combined company, the Proxy Statement fails to disclose: (i) estimates of earnings per ordinary share of the combined company for each of the fiscal years 2020 to 2022; (ii) dividends per share of the combined company on a NTM basis for each of the fiscal years 2020 to 2022; (iii) future dividends per Aon share

projected by median IBES estimates for fiscal years 2020 to 2022; and (iv) quantification of the inputs and assumptions underlying the discount rate of 5.7%.

36. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of WTW, the Proxy Statement fails to disclose: (i) the line items underlying UFCFs for each of fiscal years 2020 through 2024; (ii) quantification of the terminal value of the Company; (iii) WTW's net debt utilized in the analysis; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 6.5%; and (v) the number of fully diluted outstanding shares of WTW, as provided by WTW management.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Aon, the Proxy Statement fails to disclose: (i) the line items underlying UFCFs for each of fiscal years 2020 through 2024; (ii) quantification of the terminal value of Aon; (iii) Aon's net debt balance and non-controlling interest value utilized in the analysis; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 6.5%; and (v) the number of fully diluted outstanding shares of Aon, as provided by Aon management.

38. With respect to Goldman's *Pro Forma Discounted Cash Flow Analysis and Illustrative Present Value of Aon Shares to be Received by WTW Shareholders in the Business Combination Agreement*, the Proxy Statement fails to disclose: (i) estimates of UFCF for Aon pro forma for each of the fiscal years 2020 through 2024, and all underlying line items; (ii) fiscal year 2025 adjusted EBITDA for Aon pro forma; (iii) quantification of the terminal value of the pro forma company; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 6.5%; (v) Aon's and WTW's respective net debt and non-controlling interest balances utilized in the analysis; and (vi) the number of fully diluted outstanding shares of Aon.

39. With respect to Goldman's *Premia Analysis*, the Proxy Statement fails to disclose the transactions observed and the individual premia for each transaction.

40. With respect to Goldman's *Selected Transactions Analysis* and *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions and companies analyzed by Goldman.

41. Without such undisclosed information, WTW stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

42. The omission of this material information renders the statements in the "Aon and WTW Forward-Looking Financial Information" and "Opinion of Goldman Sachs" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

43. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Goldman.

44. The Proxy Statement sets forth that:

> Goldman Sachs acted as financial advisor to WTW in connection with, and participated in certain of the negotiations leading to, the transaction contemplated by the Business Combination Agreement. During the two year period ended March 9, 2020, the Investment Banking Division of Goldman Sachs has not been engaged by WTW or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. Goldman Sachs has also provided certain financial advisory and/or underwriting services to Aon and/or its affiliates from time to time for which Goldman Sachs' Investment Banking Division has received, and may receive, compensation, including having acted as a book-runner on Aon's commercial paper program since June 2016. During the two year period ended March 9, 2020, the Investment Banking Division of Goldman Sachs has not been engaged by Aon or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. Goldman Sachs may in the future provide financial advisory and/or underwriting services to the WTW, Aon and

their respective affiliates for which Goldman Sachs' Investment Banking Division may receive compensation.

*Id.* at 103.  The Proxy Statement fails, however, to disclose all of the services Goldman has performed for each of WTW and Aon, and the compensation received for such services, including in connection with acting as a book-runner on Aon's commercial paper program since June 2016.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. The omission of this material information renders the statements in the "Opinion of Goldman Sachs" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of WTW will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats all previous allegations as if set forth in full.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements,

in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company and Aon management's financial projections for each of WTW, Aon and the combined pro forma company, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman, and Goldman's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54. Plaintiff repeats all previous allegations as if set forth in full.

55. The Individual Defendants acted as controlling persons of WTW within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or

directors of WTW, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, WTW's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of WTW, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to WTW stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: May 28, 2020 | **WEISSLAW LLP**<br>Joel E. Elkins<br><br>By: */s/ Joel E. Elkins*<br><br>Joel E. Elkins<br>9107 Wilshire Blvd., Suite 450<br>Beverly Hills, CA 90210<br>Telephone:  310/208-2800<br>Facsimile:   310/209-2348<br>           -and-<br>Richard A. Acocelli<br>1500 Broadway, 16th Floor<br>New York, NY  10036<br>Telephone: 212/682-3025<br>Facsimile:  212/682-3010<br><br>*Attorneys for Plaintiff* |